UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARESA V. HUDSON,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | No. EDCV 16-2501 AGR<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff filed this action on December 3, 2016. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 11, 12.) On September 12, 2017, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.

# PROCEDURAL BACKGROUND

In January 2013, Hudson filed applications for disability insurance benefits and supplemental security income benefits. In both applications, she alleged an onset date of October 20, 2009. Administrative Record ("AR") 21. The applications were denied initially and on reconsideration. AR 21, 62, 73, 85, 97. Hudson requested a hearing before an Administrative Law Judge ("ALJ"). On March 17, 2015, the ALJ conducted a hearing at which Hudson and a vocational expert testified. AR 34-61. On May 13, 2015, the ALJ issued a decision denying benefits. AR 18-29. On October 7, 2016, the Appeals Council denied review. AR 1-7. This action followed.

# II.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.
# DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

### B. The ALJ's Findings

The ALJ found that Hudson met the insured status requirements through December 31, 2009. AR 23. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Hudson had the severe impairments of degenerative joint disease; diabetes mellitus; obesity; hypertension; degenerative disc disease; and tachycardia. AR 24. She had the residual functional capacity ("RFC") to perform light work with occasional postural activities; occasional overhead reaching; and frequent, pushing, pulling, reaching, and fine and gross manipulation. She was precluded from climbing of ladders, ropes or scaffolds; hazards; and concentrated exposure to extreme cold and vibration. AR 25. Hudson was capable of performing her past relevant work as a retail manager. AR 28.

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

**C. Step Two of the Sequential Analysis**

At step two of the sequential analysis, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). To satisfy the duration requirement, the severe impairment must have lasted or be expected to last for a continuous period of not fewer than 12 months. *Id.* at 140. "[T]he impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'"[2] *Id.* at 154 n.11 (quoting 20 C.F.R. § 404.1520(c)); *Smolen*, 80 F.3d at 1290 ("[A]n impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities.") (citation and internal quotation marks omitted).

Hudson's argument that the ALJ erred in failing to identify fibromyalgia at step two of the sequential analysis is insufficient. Even assuming error at step two, any error was harmless because the ALJ found in Hudson's favor at step two and therefore prejudice could occur only in later steps. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (failure to address particular impairment at step two is harmless when ALJ goes on to evaluate subsequent steps); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (same); *see also Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006) (ALJ's error harmless when it is "inconsequential to the ultimate nondisability determination").

Hudson does not identify any functional limitations associated with her fibromyalgia that the ALJ did not already consider during subsequent steps in the

---

[2] The ability to do basic work activities includes "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," "capacities for seeing, hearing, and speaking," "understanding, carrying out, and remembering simple instructions," "use of judgment," "responding appropriately to supervision, co-workers, and usual work situations," and "dealing with changes in a routine work setting." *Yuckert*, 482 U.S. at 168 (internal quotations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

sequential analysis, and the court has not located any such additional limitations. Thus, any error would be harmless.

### D. Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Hudson's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 26.

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

The ALJ determined that Hudson's subjective allegations were "not entirely credible" due to objective medical evidence and inconsistent statements in the record. AR 26-27.

The ALJ's first reason is supported by substantial evidence in the record. Medical records indicate that Hudson first reported severe pain in the range of 8/10,

worse with activity, in February 2015, about one month before the ALJ hearing. She had tingling and numbness, and was awaiting a MRI of the L5 spine.³ AR 390. Hudson had been waiting for a pain clinic referral in September 2014 and reported pain in her hands, feet and bilateral suprascapular area in her shoulders that was not helped by Cymbalta or voltaren gel. She was started on Tramadol. AR 392. In November 2014, Hudson reported being helped partially by Tramadol and appeared in no acute distress. AR 391.

Otherwise, in October 2012, an x-ray of Hudson's hands was unremarkable. AR 365. Her bilateral shoulders showed hypertrophic changes of the acromioclavicular joint, greater on the right than the left. AR 364. In November 2012, Hudson reported that her joint pain was better with medication and denied any weakness of the extremities. Her examination was normal except for tenderness along the lumbar paraspinal area. Her motor strength was 5/5, and her straight leg raise was negative. She was diagnosed with L5 spine degenerative disc disease/osteoarthritis. In February 2013, Hudson reported severe headache and was diagnosed with sinusitis. AR 380. In March 2013, Hudson reported that a low back injection helped her back pain for one month. However, she now had recurrent low back pain radiating to her legs that limited her activities. Examination showed no tender or swollen joints, and no tenderness along the spine or paraspinal area. However, she had reduced range of motion of the L5 spine. She was able to tip toe and heel walk. She was diagnosed with lumbar stenosis and prescribed Cymbalta. Her head was normal. AR 350. In May 2013, the examining physician noted a normal examination except for tenderness to palpation of the left elbow, which Hudson was unable to straighten. She had reduced range of motion of the left shoulder and lumbar spine. Other joints were normal. AR 332-36. An

---

³ Hudson did not submit medical records after February 2015. If her condition worsened, Hudson could file a new application for benefits. The court expresses no view as to the appropriate onset date in that event. *See Luna v. Astrue*, 623 F.3d 1032 (9th Cir. 2010).

6

x-ray showed Grade I spondylolisthesis of the L5/S1 with severe narrowing of the L5-S1 intervertebral disc.  AR 339.  In July 2013, Hudson reported feeling "substantially better" and "able to do more activities" after taking Cymbalta.  Examination showed no tenderness in the spine and motor strength of 5/5.  AR 349.  She had pain in her left elbow over the lateral epicondyle and was diagnosed with left tennis elbow.  *Id.*  On July 23, 2013, Hudson had no tenderness in her spine.  AR 348.  In October 2013, Hudson again had no tenderness over the spine and her motor strength was 5/5.  She had osteoarthritis of the bilateral first carpometacarpal (CMC) joints in her hands.  AR 342.  She received an injection in November 2013.  AR 341.  In January 2014, Hudson reported pain all over her body.  She was in no acute distress and had no weakness.  She was diagnosed with fibromyalgia with positive tender points and osteoarthritis of the first CMC joint in her hands.  She was prescribed Lyrica.  AR 395.  In February 2014, Hudson reported feeling better with Lyrica and her dosage was increased.  AR 394.  In May 2014, Hudson reported pain in her arms, thighs and legs.  She appeared in no acute distress.  She had positive fibromyalgia tender points.  Her Lovastatin medication was discontinued for two weeks to see if her symptoms improved.  AR 393.

   The ALJ's observation that there is inconsistency between her testimony and her statements to her physicians is also supported by substantial evidence.  She did report in July 2013 that she was feeling substantially better and able to do more activities after taking Cymbalta.  AR 349.  The medical records do not contain reports by Hudson that she is unable to stand up straight or can barely walk on her feet in the morning, conditions that one would expect Hudson to report to her doctors.  AR 46-47.

## IV.
## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED: September 19, 2017

ALICIA G. ROSENBERG
United States Magistrate Judge